Simon, J.
The plaintiff, who sues as the syndic of Gilder-meester & Co., seeks to recover the amount of two promissory notes, drawn and subscribed by the defendants Priestly & Bein, to the order of their co-defendant Richardson, and duly protested at maturity.
*424 The defence sets up, that the notes sued on, were given to the insolvents by Priestly &■ Bien in the course of commercial transactions, and that when the same fell due, to wit, in December, 1842, and January, 1843, the drawers being unable to pay them, offered to Gildermeester & Co-, certain notes and drafts which were received by the latter as collateral security for the payment of the notes. That among them there was a draft of $813 70, drawn by Bisland & Shields on John C. Harrison, and by him accepted, dated on the 12th January, 1842, and payable at twelve months to the order of Shields, and by him endorsed. That the insolvents, by taking said draft as collateral security, i bound themselves to have it duly protested in case of non-payment. That said draft was protested at maturity, when, under the instructions of said insolvents, notice thereof was sent to Bis-land & Shields, the drawers, to the parish of Lafourche Interi- or. That, on the 20th of January, 1843, a suit was instituted by Gildermeester <fc Co., in the name of Priestly & Be in against the drawers of the draft, the proceeds thereof to go to the credit of the notes sued on ; that by a judgment of the Supreme Court, Bisland, one of the drawers of said draft, and the solvent partner of the concern of Bisland & Shields, was released on the ground of insufficiency of the notice. That Priestly & Bein’s recourse upon Bisland, was lost by the negligence of the insolvents in giving incorrect instructions to their notary. That said insolvents, under the circumstances, have made said draft their own, and have become liable to the defendants for the amount thereof, with interest and costs ; and that the defendants are entitled to plead the amount of said draft, and the interest and costs, in re-convention against the plaintiff’s demand, &c.
The Judge, a quo, gave effect to this defence, admitted the re-convention, and gave judgment in favor of the plaintiff, for the balance due after allowing the amount of the draft, with interest and costs, as a further credit on the notes sued on j from which judgment, the plaintiff, being dissatisfied therewith, took this appeal.
The evidence found in the record, discloses the following facts: Bisland & Shields’ draft on John C. Harrison, accepted by the latter, for $813 70, was delivered by the defendants, Priestly *425 & Bein, to Gildermeester & Co., as collateral security for these notes sued on ; the acceptance bore the date of the 12th of January, 1842, and was payable one year after date. 'When said draft became due, the same was protested, and notice sent to the drawers by the notary, directed to the parish of Lafourche Interior; this was done according to the directions given to the notary by Gildermeester 6c Co., and it is shown, that said notary had no information from any other source, than from Gildermeester. The testimony proves, that the Houma post office in the parish of Terrebonne, is the nearest to the residence of Bisland 6c Shields ; that the Thibodeauxville post office in Lafourche Interior’ is sixteen miles further from the plantation of the drawers, than the Houma office, which is only three miles distant from said plantation ; that Gildermeester never applied to Harrison, the acceptor, nor to Bein, for directions as to the residence of said drawers : that the draft was put in the hands of a lawyer to be sued on against Bisland, and to be accounted for to Gildermeester for the amount, which might be eventually recovered ; and that a judgment having been rendered thereon, against Bisland in the District Court, the same was reversed in the Supreme Court on appeal, and the suit was dismissed as to the said draft in favor of Bisland. See 9 Robinson, 426.
It is further established by Harrison’s deposition, as a witness, that, after the draft was accepted, he received Bisland 6c Shield’s crop, which amounted to more than sufficient to pay it; and the other testimony proves that Bisland is the only party to the draft, able to pay the amount thereof.
It is also admitted that Gildermeester filed his bilan, in June, 1843.
We think the judgment complained of is correct. When Gil-dermeester took the draft in question in his possession as collateral security for the debt due him by Priestly 6c Bein, who had accordingly consented that the proceeds thereof, when collected, should be credited on the notes sued on, there arose necessarily on the part of the creditor, the obligation of preserving the rights of his debtors on the draft, so as to enable them to enforce its payment from all and every one of the parties thereto. The contract, if not precisely one of pledge, as urged by the appellees’ counsel, ' *426 was at least, and perhaps more properly, in the nature of one of agency ; that is to say, one from which the creditor, who had undertaken to make the collection of a debt due to his debtors, and therefore, to take all necessary steps to preserve their rights unimpaired, became bound to use the same exertions in obtaining the object for which the draft had been placed in his hands, as the debtors themselves would have done, and to use such diligence as would secure its ultimate recovery, not only for the purpose of obtaining satisfaction, pro tanto, of the debt which the draft was intended to secure, but also for the benefit of the party to whom the claim belonged. Priestly & Bein then may be fairly considered, in a transaction of this kind, as principals, and Gildermeester as their agent; he had the draft in his possession, and it was his duty to discharge his trust, as long as he continued to hold the draft, or become responsible to his principals for the damages which might result from its non-performance, (Civ. Code, art. 2971,) being even responsible not only for unfaithfulness in his management of the business, but also for his fault or neglect. Civ. Code, art. 2972. He was authorized to prosecute the collection of the draft; it was delivered to him for that purpose, as collateral security; the proceeds thereof, when collected, were to be applied to the extinguishment of the notes sued on ; said proceeds were to be accounted for to him accordingly, by the attorney who had been charged to institute a suit against Bisland in the names of Priestly & Bein, and owing to the insufficiency of the notice to Bisland, the latter was discharged, and it is shown he was the only solvent party to the bill. The evidence satisfies us, that Bisland’s discharge was occasioned by the agent’s neglect in not ascertaining, at the time of the maturity of the draft, the exact residence of the drawers ; in giving incorrect instructions to the notary, and in not furnishing said notary with the means of obtaing proper directions from Priestly or Bein, or from any other person well acquainted with the residence of those to whom the notices were to be sent. The paper was not originally bad ; it was good as to Bisland, but it became bad and worthless through the negligence of the agent or creditor who had undertaken to collect it, for the purposes intended between himself and his debtors, for whose benefit the collection-was tobe *427 made; and.we are of opinion, under such circumstances, Gilder-meester has made the draft his own, and is responsible for its amount.
The main question, however, which this cause presents is, whether the defendants are entitled to plead the loss which they have sustained from the negligence of the insolvent, as a recon-ventional demand against the claim set up in this suit hy the syndic? On this point, it has been insisted by the appellant’s counsel, that a claim for damages cannot be pleaded in compensation or in reconvention in any case, and that such a claim cannot be pleaded against the syudic of an insolvent estate; that it should be settled with others on the tableau; as, if it were not so, one creditor would obtain an advantage over the others.
The appellees’ claim to the amount of the draft with interest and costs, as damages, is not pleaded in compensation, but is, simply opposed by way of reconvention. It is clearly reconven-tional, because it grows out of the original transaction, and is so closely connected with it, that had the draft been collected, its, amount would have gone to the extinguishment, pro tanto, of the notes sued on. If, on the one hand, the appellees were bound to perform their obligation, by paying the amount of said notes; on the other, their creditor who had taken the draft as collateral security, had become obligated to act in such manner as to procure them the benefit of the credit, for which said draft, in the hands, of Gildermeester to whom it had been delivered, was intended by both parties. The draft was destined to be used, after collection, as a credit against the notes, was put in the possession of the creditor, in consequence of the existence of said notes, and may be properly the basis of a reconventional demand against them. Code of Pract. art. 375. We have held, that when the debt clain> ed by the plaintiff, and the damages sought for in the defendant’s answer, arise from one and the same transaction, the latter claim is a-fair and legal demand, which may be pleaded in reconvention ; and that although demands are different, but have the same •origin, and are intimately connected, being the consequence of the same transaction, the defendant may reconvene against the plaintiff for .damages in his answer, in the same suit; (10 La. 185 ;) and that it is not necessary that a demand set up by way *428 of reconvention, should always be liquidated. Bayne, v. Fox, 18 La. 82, and the authorities therein cited.
With regard to the objection, that the appellees’ recon ven tional claim cannot be opposed to the demand of the syndic of an insolvent estate, it would be good, if the reconventional rights had beeu acquired after the declared insolvency ; for then, as Toullier says, vol. 7, No. 381, it would prejudice the acquired rights of the other creditors; but here, the act or negligence from which this claim originated, took place in January, 1843, about six months before the failure of Gildermeester, and it is from that time that the responsibility of the latter necessarily attached ; the right of the appellees was then acquired, as it resulted from the fact of the drafts having been improperly protested, and of Bis-land’s having then been released from his liability as one of the drawers thereof, through the fault or neglect of Gildermeester who became subsequently insolvent. “ La compensation,” says Toullier, loco citato, (and, a fortiori, the reconvention,) “ opéreé, mime a son insu, enfaveur de celui qui est en meme terns cré-ancier et débiteur du failli, conserve tout son effet apres la fail-liteand so it was held by this court, in the case of Bossier’s Syndic v. Belaire et al. 1 Mart. N. S. 483. See also the case of Fink, Executor, v. Martin et al. ante, p. 416.

Judgment affirmed.